JOHN D. ROBERTSON (SBN.72400)
LAW OFFICES OF JOHN D. ROBERTSON, APC
1021 S. Union Ave.
Los Angeles, CA 90015
Telephone: (213) 482-8893
Facsimile: (213) 482-5002
Email:  jdrlaw@hotmail.com

Attorney for Defendant,
ARMANI AFLLEJE, DEFENDANT #5

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　　　　v.<br><br>EUGENE HENLEY, JR., et. al,<br><br>ARMANI AFLLEJE (#5),<br><br>　　　　　Defendants. | **Case No. 2:25-CR-211-FLA**<br><br>**DEFENDANT ARMANI AFLLEJE'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 19 OF THE INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER THEREON**<br><br>Hearing Date: September 11, 2026<br>Time: 10:30 a.m. |

1

TO:    THIS HONORABLE COURT AND ASSISTANT UNITED STATES ATTORNEYS KEVIN BUTLER AND JENA MACCABE:

PLEASE TAKE NOTICE that on the above date and time, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Judge Fernando L. Aenlle-Rocha, Defendant ARMANI AFLLEJE, by and through her counsel, John D. Robertson, hereby moves to dismiss Court 19 of the Indictment on the grounds that the Government obtained the Indictment by introducing evidence that was a product of unlawful wiretapping based on the Government's violation of 18 U.S.C. 2517(5), which required that the Government to seek judicial authorization for the Government to intercept, disclose and use evidence of intercepted wire communications of "other crimes" not authorized by the original Authorization Order "as soon as practicable."   The Government failed to seek judicial review and approval in violation of 18 U.S. C. 2517(5) rending the evidence statutorily inadmissible before the grand jury and rendering the Indictment as to Court 19 invalid and subject to dismissal by this Court.

Pursuant to Local Rule 7-3, undersigned counsel hereby certifies that the parties have met and conferred in a good faith effort to resolve the issues raised by this motion. Despite these efforts, the parties were unable to reach a resolution of the issues without Court intervention.

Dated: July 15, 2026          Respectfully submitted,

**LAW OFFICES OF JOHN D. ROBERTSON**

*/s/ John D. Robertson*
John D. Robertson, Esq.
Attorney for Defendant
ARMANI AFLLEJE

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Defendants Aflleje and Henley are charged in Count Nineteen of the First Superseding Indictment with violation of the Mann Act (18 U.S.C. 2421) by knowingly transporting, and willfully causing to be transported, individuals in interstate commerce from California to Nevada, with the specific intent that such individuals engage in prostitution and other criminal sexual activity, in violation of specific Nevada statutes, "in or around November, 2022".

### A.    Initial (Amended) Application and Order for Interception, dated November 1, 2022

The November 2, 2022, initial Application for wire interception in this case sought an order to intercept communications over Target Telephone 323-251-9267, a telephone believed to be used by defendant Eugene Henley, Jr.   The Application Affidavit, and resulting Court Order for interception, both specifically identified the Hobbs Act as the "Target Offense," which is a violation of 18 U.S.C 1951, "interference with commerce by threats or violence, by robbery and extortion." Defendant Aflleje is not named as a "Target Communicator," in either the Affidavit or resulting Court Order, and neither the Affidavit, nor resulting Court Order authorizing interception, ever mention "sex trafficking" or violation of the Mann Act (18 U.S.C. 2421).  The Court's resulting November 2, 2022 Wiretap Authorization Order finds probable cause for authorization based on the "Targeted Communicators" continuing to commit the "Target Offense" of interference with commerce by threats or violence. "Sex trafficking" is not a "Target Offense".

### B.    Renewal Application and Order for Interception, dated December 20, 2022.

A subsequent renewal Application for wire interception in this case and resulting Court Order, dated December 20, 2022, specifically expands the "Target

Offense(s)" as 18 U.S.C. § 1951 (interference with commerce by threats or violence), 18 U.S.C. § 922 (g) (felon in possession of a firearm or ammunition), 18 U.S.C. § 924(c) (use of a firearm in furtherance of a crime of violence or drug trafficking crime),18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1955 (conducting an illegal gambling business).

Once again, neither "sex trafficking" nor violation of the Mann Act, (with which Aflleje is charged in Count 19 of the Indictment) is identified as a "Target Offense," and Defendant Aflleje is not identified as a "Target Communicator," in either the Application/Affidavit or the resulting Court Order. In fact, the Affidavit is devoid of any mention whatsoever of Defendant Aflleje's prior interception pursuant to the previous initial Application and Court Order of November 2, 2022, and it does not appear that the government, the affiant, or anyone else, ever advised the Court of such interceptions or requested authorization from the Court to continue such interception of alleged sex trafficking conversation and use such interceptions as evidence, as required by 18 U.S.C. 2517(5).

It was not until three and a half years later, on April 23, 2026, after Defendant Aflleje was indicted by the Grand Jury on Count 19, that the Government applied for and obtained an Order pursuant to 18 U.S.C. 2517(5). No matter what legal effect this Order may have upon the pending motions to suppress wiretap evidence or to the in limine motion to exclude evidence, the order comes too late to cure the Defendant's Indictment on Count 19.

As argued below, Count 19 must be dismissed on the grounds that the evidence presented to the Grand Jury consisted of electronic interceptions, where the Government failed to comply with 18 U.S.C. 2517(5) prior to introducing the evidence at the Grand Jury proceedings. That failure rendered the wiretap evidence inadmissible before the Grand Jury under 18 U.S.C. 2515 and thus now requires the Court to dismiss the Indictment.

## II.    ARGUMENT

**A. The Count 19 Must Be Dismissed Because It Is Based Upon the Introduction of Evidence Before the Grand Jury, Obtained in Violation of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. 2517(5).**

Defendant Aflleje is charged in Count 19 of the Indictment with a violation of the Mann Act (18 U.S.C. 2421) which is a federal law that criminalizes the transportation of any individual across state or international lines for the purpose of prostitution, sexual activity, or any other illegal sexual act. The Indictment was returned on March 26, 2025. Defendant Aflleje moves to dismiss Count 19 of the Indictment on the grounds that it is based upon the introduction before the Grand Jury, of evidence obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act.

In this case, the Government, for three and a half years, never complied with the provisions of 18 U.S.C. 2517(5), which requires the Government to seek judicial authorization for the Government to intercept, disclose, and use evidence of intercepted wire communications of "other crimes" not authorized by the original Authorization Order. The statute also requires that the application be made "as soon as practicable." Id. The Government failed to seek judicial review and approval as required by 18 U.S. C. 2517(5), **prior to submitting the evidence to the Grand Jury**, rendering the evidence statutorily inadmissible before the Grand Jury, and rendering the Indictment as to Count 19 invalid and subject to dismissal by this Court. *United States v. Brodson*, 528 F. 2d 214, 216 (7th Cir. 1975); *United States v. Mancari*, 662 F. Supp. 1343, 1351-1354 (E.D. Ill. 1987).

The wiretap application in this case was dated November 2, 2022 and sought a Court Order authorizing the wiretapping of the telephone of Eugene Henley. The target offense under investigation was a violation of the Hobbs Act, the crime of

interference with commerce by threats or violence, i.e. extortion and robbery, in violation of 18 U.S.C. 1951.  Neither Defendant Aflleje nor the offense of a violation of the Mann Act was listed in the application and subsequent Authorization Order.

A wiretap renewal application and continuing Authorization Order, dated December 20, 2022, expanded the target offenses to include, in addition to the interference with commerce by threats and violence (18 U.S.C. 1951), the crimes of felon in possession of a firearm (18 US.C. 922(g)), use of a firearm in furtherance of a crime of violence or drug trafficking crime (18 U.S.C. 924c), wire fraud (18 U.S.C. 1343), and conducting an illegal gambling business. (18 U.S.C. 1955).  There was still no mention of the Mann Act.

During the course of intercepting conversations over the wiretapped telephone, the agents overheard and recorded Defendant Aflleje making statements that formed the basis for their belief that Defendant Aflleje was engaged in interstate transportation of women for the purposes of prostitution in violation of the Mann Act.  The wiretap Authorization Order did not authorize the interception of these conversations involving Defendant Aflleje.  She was not named in either the wiretap application or the Authorization Order.  More importantly, the Authorization Order did not authorize the interception of conversations involving the crime of a violation of the Mann Act.

Defendant Aflleje's conversations that were intercepted over the wiretap concerning alleged violations of the Mann Act were "evidence of crimes not specified in the Authorization Order."  "Title III allows disclosure of communications intercepted in conformity with its provisions 'in any proceeding held under the authority of the United States' 18 U.S.C. 2517(3).  Where lawful electronic eavesdropping reveals 'evidence of crimes other than those specified in the order of authorization,' that material may also be publicly disclosed, if a judge

first finds, based upon an application submitted 'as soon as practicable' by the investigating officer, that the conversations were 'otherwise intercepted' in accordance with Title III.  18 U.S.C. 2517(5)."  *United States v. Mancari*, 663 F. Supp. 1343, 1350-1351 (E.D. Ill. 1987).

Three and a half years later, the Government attempted to comply with requirement of seeking authorization and approval for intercepting conversations concerning violations of the Mann Act, which constituted other crimes not contained in the original application and Authorization Order.  On April 23, 2026, the Court granted the Government's application pursuant to 18 U.S.C. 2517(5), stating that the Government's unauthorized electronic surveillance was conducted "incidentally and in good faith" and that the "other crimes" not named in the original Authorization Order could be admitted into evidence.

This Order came three and a half years after the initial Authorization Order and three and a half years after the electronic surveillance of Defendant Aflleje had been concluded.  This application utterly fails to comply with 2517(5)'s requirement that the application be made "as soon as practicable."  Three and a half years is not "as soon as practicable" within the meaning of the statute.  In *United States v. Brodson*, 528 F. 2d 214, 215 (7th Cir. 1975) the Court found that an eight month delay "came too late in view of 2517(5)'s requirement that such application be made 'as soon as practicable.'"

Even assuming that the April 2026 Court Order complies with the statute, the Court must still dismiss Count 19 of the Indictment.  The wiretap evidence relating to the "other crimes evidence" of a violation of the Mann Act was submitted to the Grand Jury prior to the Government obtaining the April 2026 Order under 18 U.S.C. 2517(5).  Thus, the wiretap evidence concerning the Mann Act violations was not in compliance with Title III at the time that the Government submitted that evidence to the Grand Jury and constituted inadmissible evidence.

Title III prohibits the interception and disclosure of wire or oral communications, including the introduction into evidence of the same "in any trial, hearing, or other proceeding in or before any Court, **Grand Jury**, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof, if disclosure of that information would be in violation of this chapter." 18 U.S.C. 2515. In *United States v. Giordano*, 416 U.S. 505, 527 (1974) the Supreme Court held that suppression of the evidence is required "where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device."

The post-intercept/pre-disclosure requirement of 18 U.S.C. 2517(5) "is not a mere technicality whose violation is easily cured; it is a 'key provision of the legislative scheme.'" *United States v. Mancari*, 663 F. Supp. 1343, 1351 (E.D. Ill. 1987) citing *United States v. Bronson*, supra, at 216. Using electronic surveillance evidence of "other crimes" before a Grand Jury to obtain an indictment prior to obtaining the necessary review and Court Order required by 18 U.S.C. 2517(5) "violates Title III." *United States v. Mancari*, supra, at 1354. The District Court in Mancari found that use of the wiretap evidence concerning other crimes, before the Grand Jury, prior to the Government complying with 18 U.S.C. 2527(5), "mandates dismissal of the tainted indictments." *United States v Mancari*, supra, at 1353.

The facts of the Mancari case were that the Government obtained a wiretap order on Mancari's telephone. The target offense was a RICO enterprise involving a conspiracy to sell rebuilt automobiles composed of stolen parts. Three years later, Mancari was indicted for mail and wire fraud arising out of auto theft and insurance fraud related activities. On the same day the Government filed the

Grand Jury Indictment, they sought and obtained a Court Order under 18 U.S.C. 2517(5) authorizing the use of evidence of crimes "other than those specified in the order of authorization."

It was clear from the timing of the filing of the Indictment and the obtaining of the 2517(5) Order that the evidence of the "other crimes" disclosed in the wiretap investigation had been used as evidence before the Grand Jury to obtain the mail and wire fraud Indictment before the 2517(5) Order had been granted. This was the basis for the District Court's Order in Mancari that the use of the wiretap evidence concerning other crimes, before the Grand Jury, prior to the Government complying with 18 U.S.C. 2527(5), "mandates dismissal of the tainted Indictments." *United States v. Mancari*, supra, at 1353. The Court relied upon the earlier case of *United States v. Brodson*, 528 F. 2d 214, 216 (7th Cir. 1975).

In Brodson, the wiretap Authorization Order listed the target offense as 18 U.S.C. 1955, which prohibits the operation of an illegal gambling business in interstate commerce.  The Defendant was later indicted on a similar but different crime of a violation of 18 U.S.C. 1084, which prohibits the transmission of wagers and wagering information in interstate commerce.  Just prior to trial and eight months after the Defendant had been indicted, the Government filed an application under 18 U.S.C. 2517(5) seeking authorization and Court approval to use evidence of other crimes intercepted over the wiretap that were not listed in the initial Authorization Order.

Under these facts, the Court in Brodson held that the Government improperly used the wiretap evidence of other crimes before the Grand Jury without first obtaining the necessary Court review and authorization required by 18 U.S.C. 2517(5).  As a result, the evidence, at the time it was presented to the Grand Jury, was evidence used in violation of Title III and was inadmissible under 18 U.S.C. 2515.   Dismissal of the Indictment was required because it was based on

inadmissible evidence that did not comply with Title III.  *United States v. Brodson*, supra, at 216.

In Bronson, the Court stated that "[T]he Supreme Court has itself recognized 'the stringent conditions' imposed by Congress on the interceptions of private wire and oral communications.  Those restrictions not only limit the interception to specified serious crimes where prior judicial approval has been secured, but they further underscore that all interceptions are outlawed except where 'expressly authorized in Title III.'  Indeed, unauthorized interceptions and the disclosure and use of information obtained through them are denounced as crimes." *United States v. Brodson*, supra, at 216, citing *Gelbard v. United States*, 408 U.S. 41, 46 (1972).

In *United States v. Marion*, 535 F. 3d 697 (2d Cir. 1975) the Court reversed a defendant's conviction of perjury and obstruction of justice based on the failure of the Government to comply with 2517(5).  In Marion, the Government obtained two wiretap orders from a state court to investigate Marion for extortion, assault, possession of a dangerous weapon and conspiracy, all in violation of New York state law.  When questioned before a Federal Grand Jury, Marion's answers formed the basis for his prosecution for two federal crimes of perjury (18 U.S.C. 1623) and obstruction of justice (18 U.S.C. 1503).

The Court in Marion found that the state court wiretaps authorized the interception of conversations related to the state crimes of extortion, assault, and possession of a dangerous weapon.  The wiretap evidence was used in the Indictment and trial of Marion for violating the federal offenses of perjury and obstruction of justice, without first obtaining authorization under 2517(5).  The Court held that the federal offenses were separate and distinct from the alleged state crimes and "thus fall within the ambit of 2517(5)." *United States v. Marion*, supra, at 704.  The Court stated that "because the conversations here in question clearly did relate to offenses 'other than those specified' in the state court's March

15, 1972 order of authorization, and since the Government failed to obtain the subsequent judicial approval required by 2517(5) for that interception, Marion's conviction for perjury and the first count of obstruction of justice must be reversed." *United States v. Marion*, supra, at 704.

A similar dismissal of Count 19 of the Indictment is mandated in Defendant Aflleje's case.  The wiretap order was directed against the telephone of Eugene Henley and listed the target offense as a violation of 18 U.S.C. 1951, the crime of interference with commerce by threats and violence.  During the wiretap investigation, the agents intercepted the conversations of Defendant Aflleje related to an entirely different crime, a violation of 18 U.S.C. 2421, the Mann Act. Without first complying with 18 U.S.C. 2517(5) and obtaining a Court Order authorizing the use of evidence of crimes not authorized by the initial Authorization Order, the Government proceeded to introduce the wiretap evidence at a Grand Jury hearing in order to obtain an Indictment of Defendant Aflleje for the crime of violating the Mann Act as set forth in Count 19.  Without the 18 U.S.C. 2517(5) order, the wiretap evidence was not in compliance with Title III and could not be used as evidence at the Grand Jury proceedings.  That makes Defendant Aflleje's Indictment on Count 19 invalid, and the Court must now dismiss that charge.

**B. The Government's Violation of 18 U.S.C. 2517(5) Is Not Cured Under a Theory That the Mann Act Crimes "Arose Out Of and Were Closely Related To" The Crimes of Robbery and Extortion Under 18 U.S.C. 1951, The Target Offense in The Wiretap Order.**

The Government has made the argument that it was not necessary for the prosecution to seek authorization for the interception or disclosure of the Mann Act evidence under 2517(5) because the Mann Act crimes "arose out of and were closely related to" the target offense of robbery and extortion under 18 U.S.C.

1951, the Hobbs Act.  The Government relies on *United States v. Homick*, 964 F. 2d 899, 904 (9th Cir. 1992).  Although the Homick case has been accurately cited by the Government for the legal principle, that such an exception does exist, the facts of Defendant Aflleje's case are different from the Homick case, so much so that the exception to the requirement that the Government file for authorization under 2517(5) does not apply here.  The Homick case notwithstanding, the Government violated 2517(5) by failing to seek judicial authorization for the interceptions and use of the Man Act evidence "as soon as practical."

In Homick, the police were investigating a robbery that resulted in a double murder. The police obtained a wiretap on the telephone of Steve Homick and his two brothers after the police received information concerning their possible involvement in the crimes. A separate search warrant, served on the home of Ronald Bryl resulted in discovery of a diamond ring that had been taken during the robbery and murders.  The package containing the ring was labeled with the name of Charles Dietz.  Conversations over the wiretap established that Delores Homick, the ex-wife of Steve Homick, had discussed a plan with Charles Deitz to falsify evidence, claiming ownership of the ring, in order to get the incriminating ring out of the hands of the police.

Delores Homick and Charles Deitz were not charged with the robbery and murders, but were charged with conspiracy to commit wire fraud and wire fraud based on their falsely claiming ownership of the ring.  Delores moved to suppress the wiretap evidence relating to the conspiracy to commit wire fraud and wire fraud because these crimes were not listed in the wiretap authorization order, which were robbery and murder, and the prosecution failed to obtain the additional authorization under 2517(5) governing the interception of other offenses, not named in the original Authorization Order.

The Ninth Circuit rejected the claim stating: "Delores argues that the evidence relating to the offenses other than those originally specified in the wiretap authorization—namely, the Tipton robbery and murders—is inadmissible. Therefore . . . the District Court was required to suppress evidence relating to the plan to obtain the ring from the police. Section 2517(5) of the wiretap statute requires the Government to submit an additional application when the interceptions it obtains 'relate to offenses other than those specified in the order of authorization and approval.' 18 U.S.C. 2517(5)." *United States v. Homick*, supra, at 904. "Because the attempt to obtain the ring arose out of and were closely related to one of the original crimes specified in the wiretap application, we are not convinced that the wire fraud offense falls within the 'other offenses' provision of the statute. In any event, in its application of extension of the wiretap authorization, the Government included information relating to the scheme to recover the ring from the police. Because the Government kept the Court apprised of that information, it was not error for the Court to allow the Government to charge Delores with wire fraud and conspiracy to commit wire fraud." *United States v. Homick*, supra, at 904.

The Homick case does not apply to the facts of Defendant Aflleje's case, because the Government never apprised the Court of the interception of the other crimes evidence. In Homick, the other crimes evidence of wire fraud in trying to obtain the diamond ring from the police department was a crime that was committed to cover up the defendants' connection to the robbery and murders. Thus, in Homick, it was clear that the alleged other crimes of conspiracy to commit wire fraud and wire fraud were crimes that "arose out of and were closely related to" the original crimes specified in the wiretap order, the robbery and the murders. *United States v. Homick*, supra, at 904. They did not fall within the other crimes provision of the statute. Id. at 904.

In Defendant Aflleje's case, the Mann Act crimes overheard on the wiretap were not crimes that arose out of or were closely related to the Hobbs Act robberies and extortions. A Mann Act violation involves the transportation of individuals across state lines with the intent that such individuals engage in prostitution or other criminal sexual activity. 18 U.S.C. 2421. A Hobbs Act violation refers to the prosecution of individuals who commit or conspire to commit robbery or extortion affecting interstate commerce. 18 U.S.C. 1951. The evidence of a Mann Act violation has nothing to do with robbery or extortion. It is commercial sex trafficking, i.e. prostitution, not robbery or extortion.

The intercepted conversations of Defendant Aflleje's alleged violations of the Mann Act are evidence of other crimes for which the Government was required to seek authorization to intercept, disclose, and use in Court, as required by 2517(5). Furthermore, such an application was required to be made "as soon as practicable." In Defendant Aflleje's case, the Government did not obtain a 2517(5) order prior to introducing the Mann Act evidence before the Grand Jury. Since 2517(5) was violated in this case, the evidence was inadmissible and an Indictment returned based on such evidence must be dismissed.

In *United States v. Carey*, 836 F. 3d 1092 the Ninth Circuit posed the question: "[W]hat happens when a wiretap that is valid at its inception is later used to listen to someone who is not involved in the conspiracy under surveillance?" Id. at 1096. The answer was: "[I]f government agents execute a valid wiretap order and in the course of executing it discover that it was procured by a mistake and at the same time overhear incriminating conversations, the record of the conversations is admissible in evidence. It is just the 'plain view' doctrine translated from the visual to the oral dimension." *United States v. Carey*, supra, 1096-1097, citing *United States v. Ramirez*, 112 F. 3d 849, 851 (7th Cir. 1997). But "once the mistake is discovered, the Government cannot use the authority of

the warrant, or of the wiretap order, to conduct a search or interception that they know is unsupported by probable cause or is otherwise outside the scope of the statute or the Constitution." Id. at 1097.

The Court in Carey relied on an analogy to the Fourth Amendment case law in *Maryland v. Garrison*, 480 U.S. 79 (1987). In Garrison, officers secured a warrant for a suspect's apartment which was described as the entire third floor of an apartment building. During the course of the search, the officers discovered that the third floor contained two apartments, one belonging to the suspect and one belonging to Garrison. Before realizing the mistake, officers saw illegal drugs in Garrison's apartment. The Court held that the search "prior to the officers' discovery of the factual mistake" did not violate the Fourth Amendment as long as the officers' failure to realize the mistake "was objectively understandable and reasonable." *Maryland v. Garrison*, supra, at 88. But the Court stated that the officers "were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate apartment units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant." Id. at 87.

In Carey, the Court applied the Garrison analogy to a wiretap case. In Carey, the original wiretap order authorized electronic eavesdropping on Escamilla and his telephone and "persons yet unknown" who were participating in the Escamilla drug conspiracy. The Court said the original wiretap order "does not authorize the wiretapping of 'others yet unknown' participating in a conspiracy 'yet unknown.'" *United States v. Carey*, supra, at 1098. This is because "the wiretap order could not authorize surveillance of an unknown conspiracy because the statute requires agents to demonstrate probable cause and necessity to procure a wiretap order. 81 U.S.C. 2518(1)(b)-(c)." Id. at 1098. "Agent Melzer's affidavit contained probable cause that 'others yet unknown' were participating in the

Escamilla conspiracy, but it understandably contained no information about unknown people engaged in drug trafficking outside the Escamilla conspiracy." Id. at 1098.  It was conceded that Carey's drug conspiracy was entirely separate from the Escamilla conspiracy and was discovered by happenstance during the wiretap investigation of the Escamilla conspiracy.

Turning to 2517(5), the statute at issue in Defendant Aflleje's case, the Court in Carey held that 2517(5) allowed the interception of other crimes evidence during a wiretap investigation, but only when the agents were "engaged in intercepting wire, oral, or electronic communications in the manner authorized herein."  18 U.S.C. 2517(5).  *United States v. Carey*, supra, at 1098.  Since the wiretap order did not authorize the agents to listen to conversations by individuals outside the Escamilla conspiracy, the agents were required to cease wiretapping once the Government knows or reasonably should know that the person speaking on the tapped line is not involved in the target conspiracy.  They must discontinue monitoring the wiretap until they secure a new wiretap order.   Id. at 1098.

That fundamental principle should guide the Court in this case.  The wiretap order did not authorize the Government agents to listen to conversations of individuals outside of the Hobbs Act, robbery and extortion conspiracy.  The conversations relating to the Mann Act conspiracy constituted a new and different conspiracy that was outside of the Hobbs Act, robbery and extortion conspiracy. The Mann Act evidence was other crimes evidence that unexpectedly fell into the Government's possession under what Judge Posner described as "the plain view doctrine translated from the visual to the oral dimension."  *United States v. Carey*, supra, at 1097, citing *United States v. Ramirez*, 112 F. 3d 849,851 (7th Cir. 1997).

However, since those conversations concerning other crimes were not authorized to be intercepted by the original authorization order, the Wiretap Act required the Government to comply with 2517(5) and seek authorization to

intercept, disclose, and use the evidence.  Furthermore, the application must be made as soon as practicable.  Where the Government fails to comply with 2517(5), the evidence is not in compliance with the Wiretap Act and must be suppressed.  And in this case, where such evidence is used to obtain an Indictment, like Count 19 in this case, the Indictment must be dismissed.

**C. The Three and a Half Year Delay in Complying With 18 U.S.C. 2517(5) Did Not Fulfill the Requirement of Seeking Authorization to Intercept Other Crimes "As Soon As Practicable."**

Title 18, United States Code, section 2517(5) expressly states that when the wiretap intercepts evidence of other crimes not named as target offenses in the Authorization Order, the Government must seek a Court Order permitting use of such interceptions "as soon as practicable."  One Court has held that an eight month delay in filing an application under 2517(5) was not filed as soon as practicable and affirmed the dismissal of an Indictment.  *United States v. Brodson*, 528 F. 2d 214, 215 (7th Cir. 1975).  In Defendant Aflleje's case, the Government waited three and a half years.  As a matter of law, the Government's application is too late to be considered "as soon as practicable", and Title III has been violated in this case.

Section 2517(5) states:  "When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the Order of Authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted

17

in accordance with the provisions of this chapter [18 USCS §§ 2510 et seq.]. Such application shall be made as soon as practicable."

The term "as soon as practicable" does not mean any time the Government decides to retroactively authorize the interceptions and use of other crimes evidence. The whole purpose of the requirement is to allow the Court that authorized the wiretap in the first instance to review what the Government was doing with the wiretap investigation to prevent the Government agents from using the wiretap without any limitations and turning it into a general warrant. See, *Andresen v. Maryland*, 427 U.S. 463, 480 (1927) ["General warrants, of course, are prohibited by the Fourth Amendment."]; *United States v, Marion*, 535 F. 2d 697, 700-701 (2d Cir. 1976) [Section 2517(5) was enacted to prevent the naming of one crime, while anticipating intercepting evidence of a different crime for which the prerequisites of Title III could not be met].

The Wiretap Act was enacted to strike a balance between the public's right of privacy under the Fourth Amendment and the Government's interest in investigating crime. Central to the Act's concern was the realization that wiretapping posed a grave risk of exposing a person's entire life to Government intrusion, far beyond the limited purpose of gathering evidence related to a discrete crime for which the Government has probable cause at the outset of the investigation. In other words, the Wiretap Act was designed to protect the public from wholesale intrusion into a person's private life which was possible through this new investigative technique of wiretapping an individual's telephone. See, *Berger v. New York*, 388 U.S. 41, 63 (1967) ["Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices"].

Section 2515 of Title 18 prohibits the receipt into evidence of intercepted communications or their fruits "in any trial, hearing, or other proceeding in or before any Court, Grand Jury . . . or other authority of the United States, a State, or

18

a political subdivision thereof if the disclosure of that information would be in violation of this chapter." "The words 'unlawfully intercepted' are themselves not limited to constitutional violations," but include a failure to satisfy requirements of Title III that are central to the purpose of the Wiretap Act. *United States v. Giordano*, 416 U.S. 505, 527 (1974) [Suppressing wiretap evidence for failure to have the U.S. Attorney General or specially designated Assistant Attorney General authorize application to a judge for an order approving interception.]; *United States v. Marion*, 535 F. 2d 697, 701-702 (2d Cir. 1975) [A violation of 2517(5) requires suppression of the wiretap evidence.]

Section 2517(5) is one such central provision of the Wiretap Act because it arises out of a concern that wiretapping is so powerful an investigative tool that, if not strictly contained, could be used as a general warrant resulting in an unrestricted invasion of a person's right of privacy. "The framers of Title III presumably intended by this requirement to prevent evasion of the several restrictions upon original applications (e.g., showing of probable cause, enumerated serious crime, ineffectiveness of other investigatory techniques as to that offense). Otherwise, the applicant could easily name one crime while in fact he may have anticipated intercepting evidence of a different crime for which the prerequisites could not be satisfied." *United States v. Marion*, supra, at 700-701.

Viewed in this light, the Government's duty under 2517(5) cannot be ignored by Government actors who seek to utilize this powerful investigative tool. Section 2517(5) requires that the application authorizing the continued interception and use of evidence of other crimes be made "as soon as practicable." In this case, "as soon as practicable" means that the Government was required to seek judicial authorization under 2517(5) as soon as the Government became aware of the interceptions of evidence of other crimes. Once the Government agents heard evidence of the Mann Act violations, they were obligated to seek Court

authorization to continue the wiretapping of these conversations. This the Government did not do.

Alternatively, at a minimum, the Government should have sought judicial authorization under 2517(5) at the end of the wiretap investigation in December of 2022. This the Government also did not do. Rather they applied for the authorization three and a half years after the wiretap investigation had been completed and after the wiretap evidence had been offered before the Grand Jury that indicted the Defendant on Count 19. This long delayed application does not comply with the statute. At the time that the evidence was presented to the Grand Jury, it was inadmissible because of the Government's violation of 2517(5). Therefore, the Court must now dismiss Count 19 of the Indictment.


Dated: July 15, 2026          Respectfully submitted,

                              **LAW OFFICES OF JOHN D. ROBERTSON**

                              */s/ John D. Robertson*
                              John D. Robertson, Esq.
                              Attorney for Defendant
                              ARMANI AFLLEJE


The undersigned, counsel of record for Ms. Aflleje, certifies that this brief contains 5,991 words, which complies with the word limit of L.R. 11-6.1.


Dated: July 15, 2026          Respectfully submitted,

                              **LAW OFFICES OF JOHN D. ROBERTSON**

                              */s/ John D. Robertson*
                              John D. Robertson, Esq.
                              Attorney for Defendant
                              ARMANI AFLLEJE